FILED by ___ D.C.

JUL 19 2004

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 03-61849-CIV-MIDDLEBROOKS/JOHNSON

IN RE SPORTSLINE.COM SECURITIES LITIGATION

_____/

## ORDER ON MOTION TO DISMISS

THIS CAUSE comes before the Court upon the Defendants' Motion to Dismiss and
Incorporated Memorandum of Law (DE 51), filed March 29, 2004.  The Court has reviewed the
record, heard oral argument, and is otherwise advised in the premises.

### Factual Background

The above-styled action is a federal securities class action filed on behalf of a class
consisting of all persons other than Defendants who purchased the securities of SportsLine.com
Incorporated ("SportsLine" or "the Company") during the Class Period.  SportsLine is an
Internet sports company and publisher of CBS SportsLine.com  The Class Period begins on
January 30, 2001, the day the Company issued a press release announcing its earnings
expectations in the first quarter of 2001.  The Class Period ends on September 25, 2003, the day
SportsLine restated its reported financial results for the previous two and a half years.  In the
Complaint, Plaintiffs assert that (1)  Defendants violated section 10(b) of the Securities
Exchange Act of 1934 (the "Exchange Act") and 17 C.F.R. § 240.10b-5 ("Rule 10b-5") and (2)
that Defendants Levy and Sanders violated Section 20(a) of the Exchange Act.

Plaintiffs allege the facts that follow.  Defendants issued a series of false and misleading
statements regarding the Company's financial status.  Specifically, the Company's financial



1

filings with the Securities and Exchange Commission (the "SEC") and press releases regarding its financial status were materially false and misleading because, in violation of Generally Accepted Accounting Principles ("GAAP") and the securities laws, the Company fraudulently, or in a severely reckless manner, failed to properly account for the value of the stock options granted to Company employees; improperly recognized revenue; understated "cost of revenue" and "other sales and marketing" expenses; and failed to maintain adequate internal accounting controls. (Compl. ¶ 2). The Company's GAAP violations were perpetrated in order to allow the Company to pay off its contractually obligated $20 million stock payment to CBS with less shares of stock than it would have had to use had the stock price been lower and in order to enable the Company to complete its planned purchase of Sandbox.com with less shares of stock than it would have had to use had the stock price been lower. (Compl. ¶ 3). When the Defendants belatedly disclosed the accounting improprieties on September 26, 2003, they negatively impacted the Company's previously reported earnings, revenues, and/or losses. (Compl. ¶ 4). As a result, SportsLine's stock price plummeted. (Compl. ¶ 5). Because of Defendants' misrepresentations, SportsLine investors have sustained tremendous losses. (Compl. ¶ 6). Because the Company's financial condition continues to decline, SportsLine investors will continue to suffer losses. (Compl. ¶ 6).

Defendants maintain that the Complaint reflects that SportsLine made accounting mistakes in applying GAAP and promptly corrected these mistakes upon their discovery by restating a series of historical financial statements dating back to 2001. Defendants now move to dismiss the Complaint because the scienter allegations therein "fall woefully short" of meeting the heightened pleading requirements of the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4 et seq. ("PSLRA") to establish a "strong inference of scienter." (Defs.' Motion

at 1).

## Standard of Review

A motion to dismiss is appropriate when it is demonstrated "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). For the purpose of the motion to dismiss, the complaint is construed in the light most favorable to the plaintiff, and all facts alleged by the plaintiff are accepted as true. *Hishon v King & Spaulding*, 467 U.S. 69, 73 (1984). Regardless of the alleged facts, however, a court may dismiss a complaint on a dispositive issue of law. *Marshall County Bd. of Educ. v Marshall County Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993). It is from here that the Court begins its analysis of Defendants' Motion to Dismiss.

## Analysis of Section 10(b) and Rule 10b-5 Claims

### 1. Introduction

Section 10(b) makes it unlawful for any person directly or indirectly to "use or employ, in connection with the purchase or sale of any security...any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C. § 78j. Rule 10b-5, promulgated by the SEC, makes it unlawful for any person to directly or indirectly "make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." 17 C.F.R. § 140.10b-5. In order to allege securities fraud

under Rule 10b-5, a plaintiff must show: "1) a misstatement or omission, 2) of a material fact, 3) made with scienter, 4) on which plaintiff relied, 5) that proximately caused his injury." *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1281 (11th Cir 1999).

Rule 9(b) of the Federal Rules of Civil Procedure requires that in all averments of fraud the circumstances constituting fraud be stated with particularity. In response to concerns that "frivolous securities litigation 'unnecessarily increase[s] the cost of raising capital and chill[s] corporate disclosure, [and is] often based on nothing more than a company's announcement of bad news, not evidence of fraud,'" Congress passed the PSLRA. *In re Comshare, Inc. Securities Litigation*, 183 F.3d 542, 548 (6th Cir. 1999)(quoting S. Rep. No. 104-98 (1995), reprinted in 1995 U.S.C.C.A.N. 679, 690). The PSLRA has raised the pleading requirements in private securities lawsuits to require Plaintiffs to plead both falsity and scienter with particularity. 15 U.S.C. § 78u-4 requires that the complaint specify each statement "alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which the belief is formed." Defendants do not argue that Plaintiffs have not pled fraud with particularity. They do, however argue that in contravention of the PSLRA, Plaintiffs have not "with respect to each act or omission alleged to violate this chapter, state[d] with particularity facts giving rise to a strong inference that the defendant[s] acted with the required state of mind." 15 U.S.C. § 78u-4. Defendants' Motion to Dismiss is based solely on the claim that the scienter allegations in the Complaint are legally inadequate. Accordingly, in this Order, the Court will only examine Plaintiffs' scienter allegations.

In *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, (1976), the Supreme Court defined scienter in the context of Section 10(b) and Rule 10b-5 as a "mental state embracing intent to

deceive, manipulate or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 194 n. 12 (1976). In *Ernst & Ernst*, the Court precluded the possibility of liability under § 10(b) and Rule 10b-5 for negligence, but expressly left open the question of whether scienter included recklessness. *Id*. Since the passage of the PSLRA, the circuits have been split regarding whether or not (1) allegations of recklessness and (2) allegations of motive and opportunity to commit fraud are sufficient to allege scienter.

Several Circuits including the Eleventh Circuit have held that allegations of severe recklessness are sufficient to allege scienter, whereas allegations merely of motive and opportunity are not. *See Nathenson v. Zonagen Inc.*, 276 F.3d 400, 409 (5th Cir. 2001); *City of Philadelphia v. Fleming Cos.*, 264 F.3d 1245, 1258-60 (10th Cir. 2001); *Greebel v. FTP Software, Inc.*, 194 F.3d 185, 198-201 (1st Cir. 1999); *Bryant*, 187 F.3d at 1286. The Second and Third Circuits have held that a strong inference of scienter can be alleged not only by pleading recklessness, but also by pleading that a Defendant had a motive and opportunity to commit fraud. *In re Advanta Corp. Sec. Litig.*, 180 F.3d 525 (3rd Cir. 1999); *Press v. Chemical Inf. Servs. Corp.*, 166 F.3d 529, 538 (2d Cir. 1999). The Ninth Circuit has held that under the PSLRA, neither allegations of recklessness nor motive and opportunity to commit fraud are sufficient to allege scienter, but that allegations of conscious recklessness are. *In re Silicon Graphics Sec. Litig.*, 183 F.3d 970 (9th Cir. 1999). The Eleventh Circuit's standard for pleading scienter is more demanding than that of the Second and Third Circuits, but less demanding than that of the Ninth Circuit.[1]

---

[1]The Court notes that because the Eleventh Circuit interprets the required level of scienter under the PSLRA in a manner similar to the First, Fifth, Sixth, and Tenth Circuits, it will look to cases from those Circuits as being persuasive. Because the Eleventh Circuit interprets the required level of scienter under the PSLRA quite differently than the Second, Third, and Ninth Circuits, it will be unlikely to find cases from those Circuits persuasive.

In the Eleventh Circuit, "severe recklessness" satisfies the scienter requirement under Rule Section 10(b) and Rule 10b-5. *Bryant*, 187 F.3d at 1282. "Severe recklessness is limited to those highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and that present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it." *Broad v. Rockwell International Corp.*, 642 F.2d 929, 961-962 (5th Cir. 1981).[2] In the context of the PSLRA, the Sixth Circuit has described recklessness as "a mental state apart from negligence and akin to conscious disregard." *In re Comshare*, 183 F.3d 542, 549 (6th Cir. 1999). A court in the Middle District of Georgia explained its view of the PSLRA's requirements in the following way:

> Taken together, it appears that in order to satisfy the heightened pleading standard under the PSLRA, a plaintiff must state facts that if true, would compel or forcefully suggest that a given defendant acted with the required state of mind. A plaintiff need not disprove every conceivable rationale a defendant might put forward to explain why a particular statement was made. However, if the facts alleged do not exclude other plausible explanations that would undercut a plaintiff's circumstantial inference of scienter, then that plaintiff's facts cannot be fairly said to raise a 'strong inference' that the defendant acted with the required state of mind. *Bryant v. Avado Brands, Inc.*, 100 F.Supp.2d 1368, 1376 (M.D.Ga. 2000).

In the Complaint, Plaintiffs argue that when viewed in their totality, the following allegations make it clear that they have sufficiently plead scienter: (1) SportsLine failed to comply with GAAP; (2) because stock was being used to pay for the acquisition of Sandbox.com and for payment to Viacom, the Company and individual Defendants had a motive to inflate the price of the Company's stock; (3) two Company employees resigned during the Class Period; (4)

---

[2]Decisions by the Fifth Circuit that existed prior to October 1, 1981 are binding as precedent on the Eleventh Circuit. *Bonner v. City of Prichard, Alabama*, 661 F.2d 1206, 1207 (11th Cir. 1981).

the individual Defendants, by virtue of their positions as officers and directors are in a position to know the nature and extent of accounting irregularities; and (5) Company insiders, including the individual Defendants, sold stock during the Class Period. Defendants respond that the allegations if taken as true show only that SportsLine made some accounting mistakes in applying GAAP, but promptly corrected said mistakes upon their discovery. Defendants argue that Plaintiffs' Complaint is an example of pleading "fraud-by-hindsight" and by no means satisfies the heightened pleading requirements of the PSLRA. Keeping these arguments in mind, the Court begins its analysis of Defendants' Motion to Dismiss.

### 2.      Totality of the Circumstances

Defendants have argued that in isolation none of Plaintiffs' allegations would be sufficient to meet the heightened pleading requirements of the PSLRA. The Court will, however, consider the allegations in their entirety, not individually, in determining the sufficiency of the scienter allegations. Many Circuits have held that under the PSLRA, courts should review complaints in their entirety when determining whether they raise the requisite inference of scienter. *See Goldstein v. MCI WorldCom*, 340 F.3d 238, 246-7 (5th Cir. 2003); *Gompper v. VISX, Inc.*, 298 F.3d 893, 896 (9th Cir. 2002); *City of Philadelphia v. Fleming Cos., Inc.*, 264 F.3d 1245, 1262 (10th Cir. 2001); *Greebel v. FTP Software, Inc.*, 194 F.3d 185, 195 (1st Cir. 1999). Moreover, the Eleventh Circuit has used language implying the same. *See Bryant*, 187 F.3d at 1285-86 ("While allegations of motive and opportunity may be relevant to a showing of severe recklessness, we hold that such allegations, without more, are not sufficient to demonstrate the requisite scienter"). Courts in the Southern District of Florida have also analyzed the establishment of scienter by looking to the totality of the allegations in a complaint.

*See In re Hamilton Bankcorp, Inc. Securities Litigation*, 194 F.Supp.2d 1353, 1359 (S.D.Fla. 2002)("the cumulative effect and totality of the allegations support a strong inference" of scienter); *In re Sunbeam Securities Litigation*, 89 F.Supp.2d 1326, 1345-46 (S.D.Fla. 1999); *In re: Saf T Lok, Inc. Securities Litigation*, 2003 WL 22383607, *8-*9 (S.D.Fla. 2003)(finding that the totality of the circumstances did not indicate a strong inference of scienter).

### 3.    GAAP Violations

The bulk of Plaintiffs allegations describe Defendants' GAAP violations.  The Southern District of California has recently explained, GAAP "comprise a set of basic postulates and broad accounting principles pertaining to business enterprises.  These principles, approved by the American Institute of Certified Public Accountants ('AICPA'), establish guidelines for measuring, recording and classifying the transactions of a business entity." *Reiger v. Price Waterhouse Coopers LLP*, 117 F.Supp.2d 1003, 1009 (S.D.Cal. 2000)(internal citations omitted).  SEC regulations state that regulatory financial statements that "are not prepared in accordance with generally accepted accounting principles will be presumed to be misleading or inaccurate, despite footnote or other disclosures…." 17 C.F.R. §210.4-01(a)(1).

Without any additional evidence of scienter, a defendant's failure to follow GAAP or publication of inaccurate accounting figures, is insufficient to state a claim for securities fraud. *See In re Comshare*, 183 F.3d at 553; *In re SCB Computer Technology*, 149 F.Supp.2d 334, 346 (W.D.Tenn. 2001).  Violations of GAAP without more, may establish negligence, but can never establish scienter. *Rieger*, 117 F.Supp.2d at 1010.  "[V]iolations of GAAP…provide evidence of scienter only when accompanied by *additional* facts and circumstances that raise an inference of fraudulent intent. *Id.  See also Cheney v. Cyberguard Corp.*, 2000WL 1140306, *11 (S.D.Fla.

2000); *Malin v. IVAX Corp.*, 17 F.Supp.2d 1345, 1360 (S.D.Fla. 1998)(allegations of defendants'

motive and opportunity coupled with GAAP violations are insufficient to plead scienter under

the PSLRA); *In re Agribiotech Securities Litigation*, 2000 WL 1277603, *5 (D.Nev. 2000)(use

of effective date accounting in violation of GAAP as described in APB Opinion No. 22 cannot

support a securities action as a matter of law).   As Plaintiffs' point out, in some cases, courts

have allowed circumstances surrounding GAAP violations to contribute to a strong inference of

scienter. *See In re MicroStrategy, Inc. Sec. Litig.*, 115 F.Supp.2d 620 (E.D.Va. 2000)("The mere

*fact* that there was a restatement or a violation of GAAP, by itself, cannot give rise to a strong

inference of scienter; the *nature* of such a restatement or violation, however, may ultimately do

so."..."when the number, size, timing, nature, frequency, and context of the misapplication or

restatement are taken into account."); *In re Adaptive Broadband Sec. Litig.*, 2002 U.S. Dist.

LEXIS 5887 (N.D.Cal. 2002)(corroborating GAAP violations with detailed evidence of the

contemporaneous decision making behind the accounting errors showing that statements were

known to be false at the time they were made to the SEC and the investing public set forth

sufficient evidence of scienter).   The Court must examine the above-styled cause to determine

whether Plaintiffs allegations give rise to the same types of circumstances that courts have

determined legally support a strong inference of scienter.[3]

In cases in which courts throughout the nation have allowed circumstances surrounding

GAAP violations to contribute to a strong inference of scienter sufficient to withstand a motion

---

[3]Plaintiffs state that "While allegations of GAAP violations alone are insufficient to demonstrate
scienter, such allegations suffice where plaintiffs allege enough details about the nature and
extent of the violations." (Pls. Resp. at 10).  The Court does not find this to be an accurate
statement of the case law.  It is the *circumstances* surrounding GAAP violations that can lead to
a strong inference of scienter, not whether or not *details* about the GAAP violations have been
alleged.

to dismiss, several factors are often present.[4]  *In re SCB Computer Technology*, 149 F.Supp.2d

334 (W.D.Tenn. 2001).  First, the cases contain allegations of insider trading.  *Id*. at 350-51.

Second, the magnitude of the improperly recognized revenues is great.  *Id* at 351.  Third, the

GAAP violations relate to major balance sheet items based on contracts of tremendous

magnitude and financial importance to the corporation.  *Id*.  Fourth, the contracts are contingent

upon some future occurrence or consignment transactions in which the other party has no

---

[4]Other Courts have also noted these factors.  In *In re SCB Computer Technology*, 149 F.Supp.2d 334 (W.D.Tenn. 2001), a Court in the Western District of Tennessee evaluated whether the circumstances surrounding a corporation's alleged  violation of GAAP rendered those allegations sufficient to support a strong inference of scienter.  It did so by checking the Complaint to see that (1) it contained allegations of insider trading; (2) the magnitude of the improperly recognized revenues was great; (3) the GAAP violations related to major balance sheet items based on contracts of tremendous magnitude and financial importance to the corporation; (4) the contracts were contingent upon some future occurrence or consignment transactions in which the other party had no obligation to pay the corporation the amount recorded as revenue; and (5) the GAAP violation violated the corporation's internal policies.  *In re SCB Computer Technology*, 149 F.Supp.2d at 334, 350-52.
In *Greebel v. FTP Software, Inc.*, 194 F.3d 185, 196 (1st Cir. 1999), the First Circuit noted that it had considered many different types of evidence as relevant to show scienter, including the following: (1) insider trading (*See Greebel*, 194 F.3d at 206); (2) divergence between internal reports and external statement on the same subject (*See Serabian v. Amoskeag Bank Shares, Inc.*, 24 F.3d 357, 361 (1st Cir. 1994)); (3) closeness in time of an allegedly fraudulent statement or omission and the later disclosure of inconsistent information (*See Shaw v. Digital Equipment, Corp.*, 82 F.3d 1194, 1224-25 (1st Cir. 1996)); (4) evidence of bribery by a top company official (*See Greenstone v. Cambex Corp.*, 975 F.2d 22, 26 (1st Cir. 1992)); (5) existence of an ancillary lawsuit charging fraud by a company and the company's quick settlement of that suit (*See Id.*); (6) disregard of the most current factual information before making statements (*See Glassman v. Computervision Corp.*, 90 F.3d 617, 627 (1st Cir. 1996)); (7) disclosure of accrual basis information in such a way that its negative implications could only be understood by someone with a high degree of accounting skill (*See Holmes v. Bateson*, 583 F.2d 542, 552 (1st Cir. 1978)); (8) the personal interest of certain directors in not informing disinterested directors of an impending sale of stock (See t*he Estate of Soler v. Rodriguez*, 63 F.3d 45, 54 (1st Cir. 1995)); and (9) the self-interested motivation of defendants in the form of saving their salaries or jobs (*See Serabian*, 24 F.3d at 368).

obligation to pay the corporation the amount recorded as revenue. *Id.* at 352. Fifth, the GAAP

violation violates the corporation's internal policies. *Id.*

    Although most of the factors noted above are relevant to GAAP violations based on

misstatements of revenues from corporate contracts, they are instructive here. In the above-

styled cause, in describing Defendants' GAAP violations, Plaintiffs allege amounts that

Defendants overstated revenues, understated compensation expenses, improperly recognized

deferred compensation, and understated net losses in the financial statements that the Company

filed with the SEC during the Class Period. (Compl. at ¶¶ 30-32, 51-53, 55-57, 61-66, 73-75,

78-80, 87-89, 94-97, 105-07, 111-13).[5]

---

[5] More specifically, Plaintiffs make the following allegations:

    1.    In contravention of GAAP (APB Opinion No. 25), the Company failed to recognize compensation expense of $3,419,000 for the quarter ended March 31, 2001 in connection with stock options granted to employees. In this manner the Company materially understated its reported operating loss and its net loss for the quarter. The non-recordation of other expenses further understated the Company's reported operating loss and net loss for the quarter. In all, for the Company, there was a 1.54 percent change between the original and restated gross profit for the quarterly period ended March 31, 2001. (Compl. ¶¶ 30-32).

    2.    In contravention of GAAP (APB Opinion No. 25), the Company materially understated compensation expense, and thereby the reported net loss for the quarter ended June 30, 2001, by $667,000. The non-recordation of other expenses further understated the Company's reported operating loss and net loss for the quarter. In all, for the Company, there was a .69 percent change between the original and restated gross profit for the quarterly period ended June 30, 2001. (Compl. ¶¶ 51-53).

    3.    By failing to prepare the Company's financial statements in compliance with GAAP (APB Opinion No. 25), the Company materially understated compensation expense and thereby materially overstated reported net income for the quarter ended September 30, 2001 by $515,000. In addition, the September 30, 2001 financial statements failed to recognize $3,475,000 of deferred compensation in connection with transactions between the Company and Defendants Levy and Sanders. In all, for the Company, there was a .41 percent change between the original and restated gross profit for the quarterly period ended September 30, 2001. (Compl. ¶¶ 55-57).

    4.    By failing to prepare the Company's financial statements in compliance with GAAP (APB Opinion No. 25), the Company materially understated compensation

expense and thereby the reported net loss for the quarter and for the year ended December 31, 2001 by $187,000 and $6,067,00, respectively. The non-recordation of other expenses further understated the Company's reported operating loss and net loss for the quarter and for the year ended December 31, 2001. In all, for the Company, there was a 7.96 percent and 3.08 percent change between the original and restated gross profit for the quarter and for the year ended December 31, 2001, respectively. (Compl. ¶¶ 61-66).

5. By failing to prepare the company's financial statements in compliance with GAAP (APB Opinion No. 25), the Company materially understated compensation expense, and thereby the reported net loss for the quarter ended March 31, 2002, by $1,029,000. In all, for the Company, there was a 4.69 percent change between the original and restated gross profit for the quarterly period ended March 31, 2002. (Compl. ¶¶ 73-75).

6. By failing to prepare the company's financial statements in compliance with GAAP (APB Opinion No. 25), the Company materially understated compensation expense, and thereby the reported net loss for the quarter ended June 30, 2002, by $679,000. The non-recordation of other expenses further understated the Company's reported operating loss and net loss for the quarter. In all, for the Company, there was a .48 percent change between the original and restated gross profit for the quarterly period ended June 30, 2002. (Compl. ¶¶ 78-80).

7. By failing to prepare the company's financial statements in compliance with GAAP (APB Opinion No. 25), the Company materially understated compensation expense, and thereby the reported net loss for the quarter ended September 30, 2002 by $811,000. The non-recordation of other expenses further understated the Company's reported operating loss and net loss for the quarter. In all, for the Company, there was a .38 percent change between the original and restated gross profit for the quarterly period ended September 30, 2002. (Compl. ¶¶ 87-89).

8. By failing to prepare the Company's financial statements in compliance with GAAP (APB Opinion No. 25), the Company materially understated compensation expense and thereby the reported net loss for the quarter and for the year ended December 31, 2002 by $716,000 and $3,077,00, respectively. The non-recordation of other expenses further understated the Company's reported operating loss and net loss for the quarter and for the year ended December 31, 2002. In all, for the Company, there was a .24 percent and 1.08 percent change between the original and restated gross profit for the quarter and for the year ended December 31, 2002, respectively. (Compl. ¶¶ 94-97).

9. By failing to prepare the company's financial statements in compliance with GAAP (APB Opinion No. 25), the Company materially understated compensation expense, and thereby the reported net loss for the quarter ended March 31, 2003 by $386,000. The non-recordation of other expenses further understated the Company's reported operating loss and net loss for the quarter. In all, for the Company, there was a .34 percent change between the original and restated gross profit for the quarterly period ended March 31, 2003. (Compl. ¶¶ 105-07).

10. By failing to prepare the company's financial statements in compliance with

Most of Plaintiffs allegations regarding GAAP violations involve improper accounting valuation of stock-based compensation for SportsLine employees.  Defendants and Plaintiffs, however,  interpret the nature of the GAAP violations differently.  Plaintiffs argue that the improper accounting valuation of the stock-based compensation for company employees is a glaring example of scienter because it is based on a simple calculation that leaves little, if any, room for interpretation.  (Pls.' Resp. at 10-11).  Defendants chose to use the "intrinsic value" method to determine the value of their stock options.  (Compl. ¶ 36).  The intrinsic value method calculates the intrinsic value of a stock option by determining the amount by which the market price of the underlying stock exceeds the exercise price of an option.[6]  (Pls.' Resp. at 11). Plaintiffs assert that because the intrinsic value of a stock option is objective, verifiable, and not based on estimates or data subject to differing interpretations, Defendants had to have known or at the very least were severely reckless in not knowing that these valuations were wrong.  In sum, Plaintiffs argue that because Defendants' GAAP violations were of simple accounting rules and therefore incredibly obvious, an inference of scienter can be made.

Defendants respond that the nature of the error made by SportsLine in applying GAAP is not based on a simple mathematical calculation, but rather that Defendants "made an error in

---

GAAP (APB Opinion No. 25), the Company materially understated compensation expense, and thereby the reported net loss for the quarter ended June 30, 2003, by $375,000.  The non-recordation of other expenses further understated the Company's reported operating loss and net loss for the quarter.  In all, for the Company, there was a .68 percent change between the original and restated gross profit for the quarterly period ended June 30, 2003.  (Compl. ¶¶ 30-32).

[6] For example, an option with an exercise price of $20 on a stock whose current market price is $25 has an intrinsic value of $5.  (Pls.' Resp. at 11).

determining the measurement dates of employee stock option grants." (Amended 2002 Form

10-K, Compl. ¶ 27). "FASB statement No. 123 requires companies to calculate the intrinsic

value of stock options granted as of their 'measurement date,' which can be different than the

'grant date.'" (Defs.' Reply at 2). "Under the intrinsic value based method, compensation cost is

the excess, if any, of the quoted market price of the stock at grant date or other measurement

date over the amount an employee must pay to acquire the stock." (Compl. ¶ 35). Because the

Court finds that interpretations of the measurement date criteria embodied in APB No. 25[7] are

---

[7]Compl. ¶ 37 states the following:
APB Opinion No. 25, which Defendants' SEC filings refer to as the applicable GAAP, sets forth
relevant rules as follows:

    a.    ...the unadjusted quoted market price of a share of stock of the same class that
        trades freely in an established market should be used in measuring compensation.

    b.    The measurement date for determining compensation cost in stock option,
        purchase, and award plans is the first date on which are known both (1) the
        number of shares that an individual employee is entitled to receive and (2) the
        option or purchase price, if any.  That date for many or most plans is the date an
        option or purchase right is granted or stock is awarded to an individual
        employee...

    c.    The measurement date is not changed from the grant or award date to a later date
        solely by provisions that termination of employment reduces the number of shares
        of stock that may be issued to an employee.

    d.    The measurement date of an award of stock for current service may be the end of
        the fiscal period, which is normally the effective date of the award, instead of the
        date that the award to an employee is determined if (1) the award is provided for
        by the terms of an established formal plan, (2) the plan designates the factors that
        determine the total dollar amount of awards to employees for the period (for
        example, a percent of income), although the total amount or the individual awards
        may not be known at the end of the period, and (3) the award pertains to current
        service of the employee for the period.

    e.    Renewing a stock option or purchase right or extending its period establishes a
        new measurement date as if the right were newly granted.

    f.    Transferring stock or assets to a trustee, agent, or other third party for distribution
        of stock to employees under the terms of an option, purchase, or award plan does
        not change the measurement date from a later date to the date of transfer unless
        the terms of the transfer provide that the stock (1) will not revert to the
        corporation, (2) will not be granted or awarded later to the same employee on
        terms different from or for services other than those specified in the original grant
        or award, and (3) will not be granted or awarded later to another employee.

far from obvious, there is no need to address this aspect of Plaintiffs' argument.  Instead, the court will evaluate the GAAP violations in light of the factors previously discussed as being circumstances surrounding GAAP violations that contribute to a strong inference of scienter sufficient to withstand a motion to dismiss.

The Court will examine whether (1) there are allegations of insider trading; (2) if the misstatements were of great financial magnitude; (3) whether the GAAP violations related to transactions of great financial importance to the corporation; (4) whether the misstatements were based upon future events that were not necessarily going to occur; and (5) whether the GAAP violation violated SportsLine's internal policies.  Taking the violations as alleged in the Complaint as true, the Court thinks that none of the discussed factors are present in the instant case.

First, although there are allegations of stock sales, as discussed below, there are no proper allegations of insider trading.  Second, the misstatements were nowhere near the magnitude of those in other cases.  There was a 15.83 percent change between the original and restated net income for the year ended December 31, 2001.  (Compl. ¶ 61).  There was a 6.43 percent change between the original and restated net income for the year ended December 31,

_____

g.   Compensation cost in stock option, purchase, and award plans should be recognized as an expense of one or more periods in which an employee performs services and also as part or all of the consideration received for stock issued to the employee through a plan.  The grant or award may specify the period or periods during which the employee performs services, or the period or periods may be inferred from the terms or from the past pattern of grants or awards...

h.   An employee may perform services in several periods before an employer corporation issues stock to him for those services.  The employer corporation should accrue compensation expense in each period in which the services are performed.  If the measurement date is later than the date of grant or award, an employer corporation should record the compensation expense each period from date of grant or award to date of measurement based on the quoted market price of the stock at the end of each period.

2002. (Compl. ¶¶ 96). In 2003, there was a 5.00 percent and a 3.54 percent change between the original and restated net income for the quarterly period ended March 31, 2003 and June 30, 2003 respectively. (Compl. ¶¶ 107, 111). Plaintiffs do not allege that Defendants greatly overstated their revenue. *Cf. In re MicroStrategy*, 115 F.Supp.2d at 636 (accounting errors led to a shifting from a reported net income of $18.9 million to a net loss of more than $36 million for the period); *In re Adaptive Broadband Sec. Litig.*, 2002 U.S. Dist. LEXIS 5887 at *19 n1(revenue figures were overstated by 158.3 percent and an initial net loss of $62.6 million turned out to be $98.9 million).

Third, the GAAP violations primarily concerned the accounting for an employee stock option plan, not part of SportsLine's core business activity. *Cf. In re MicroStrategy*, 115 F.Supp.2d at 638-9 (Company violated GAAP with respect to three of its most important contracts: one accounted for 50% of reported license revenues for the quarter and for all of the revenue and earnings growth the Company purportedly saw that was characterized by analysts as a "watershed event" in Company history; the other two accounted for 25% of the company's revenue for the quarter). Fourth the misstatements were not based upon future events that were not necessarily going to occur. *Cf. In Re Ancor Communications, Inc.*, 22 F.Supp.2d 999, 1004-05 (D.Minn. 1998)(defendant convinced customers to accept inventory they had no obligation to purchase in order to inflate revenue for particular financial periods). Finally, Plaintiffs do not allege that Defendants GAAP violations were also violations of SportsLine's internal policies. *Cf. In re MicroStrategy*, 115 F.Supp.2d at 638 (Defendants violated GAAP and their own accounting policies with respect to contracts); *In re Adaptive Broadband Sec. Litig.*, 2002 U.S. Dist. LEXIS 5887 (informants reported that Defendants knowingly violated Company procedures and joked about said violations).

Plaintiffs allegations do not give rise to the types of circumstances surrounding GAAP violations that courts have determined legally support an inference of scienter. The GAAP violations were not obvious, nor of great importance or magnitude.

**4.      Motive**

CBS and SportsLine entered into an agreement whereby CBS receives SportsLine's common stock in exchange for licenses of CBS trademarks, advertising and promotional consideration and sales opportunities. (Compl. ¶ 133). The agreement requires SportsLine among other obligations, to issue to CBS $20 million worth of its common stock on each of April 1, 2003, July 1, 2004, October 1, 2005, and January 1, 2007. *Id.* The number of shares that SportsLine issued to CBS on April 1, 2003 was limited to a number of shares that would not increase Viacom's[8] beneficial ownership of SportsLine's outstanding shares above 39.9% while maintaining the aggregate payment amounts over the term of the agreement. *Id.* On April 2, 2003, SportsLine announced that 5,454,428 shares of its common stock valued at $5,399,884 were being issued to CBS with the remainder of its 2003 obligation of $20 million deferred until July 1, 2004. *Id.* Plaintiffs allege that because the higher the value of Sportsline's stock, the greater the amount of the obligation the Company could pay, the SportsLine GAAP violations were perpetrated in order to allow it to pay off its contractually obligated $20 million stock payment to CBS with less shares of stock than it would have had the stock price been lower. (Compl. ¶ 133-134).

SportsLine planned to purchase Sandbox.com. Although the agreement with Sandbox was eventually terminated due to Sandbox's breach of certain representations and covenants in

_____

[8] CBS Broadcasting Inc. is a unit of Viacom Inc.

the acquisition agreement, the acquisition was to be paid for using SportsLine stock. Plaintiffs allege that one of Defendants' primary objectives in perpetrating the fraud was to lessen the amount of stock the Company would have to issue in order to complete its purchase of Sandbox.com (Compl. ¶ 134).

Plaintiffs do not plead any facts connecting the GAAP violations with SportsLine's obligations to CBS or desire to acquire Sandbox.com. They merely generally allege that the two above discussed transactions provided motivations for Defendants to inflate the stock price. Allegations of motive and opportunity can be relevant to a showing of scienter. As discussed previously, however, in the Eleventh Circuit, unlike in the Second and Third Circuit, a strong inference of scienter cannot be shown merely by pleading a motive and opportunity to commit fraud. Regardless, allegations of a motive to maintain stock price or enhance a Company's business prospects cannot support a strong inference of scienter. *Druskin v. Answerthink, Inc.*, 299 F.Supp.2d 1307, 1338 (S.D.Fla. 2004)("General allegations of motive such as maintaining a company's stock price or meeting analyst estimates, do not support a strong inference of scienter."); *In re Med/Waste, Inc. Securities Litigation*, 2000 WL 34241099, at *6 (S.D.Fla. 2000)(motive to artificially inflate stock prices in light of Company's acquisition program of acquiring other companies with stock instead of cash insufficient to show scienter).

### 5.      Departure of Key Employees

Andrew Sturner, SportsLine's former president of corporate and business development, resigned the day that SportsLine announced its 2Q 2002 earnings. (Compl. ¶ 137). Dan Leichtenschlag, SportsLine's former president of operations and chief technology officer, resigned two weeks before the Company released its 1Q 2002 earnings. *Id*. Plaintiffs allege that

the resignation or movement of the said two division pendents is highly suspicious. *Id.*

Plaintiffs cite *In re Adaptive Broadband Sec. Litig.*, 2002 U.S. Dist. LEXIS 5887, *43 (N.D. Cal. 2002), in support of their contention that departure of key employees can support a strong inference of scienter when they are part of a wider array of allegations that support an inference that the defendants acted with the requisite knowledge or recklessness. (Pls.' Resp. at 14).

In *Adaptive Broadband*, Adaptive's former Chairman and CEO as well is its CFO, a Defendant Lawrence and Birks, resigned and their severance payments were suspended. *Adaptive Broadband*, 2002 U.S. Dist. LEXIS 5887, at *42-*43. Another Defendant Maloney was replaced as CFO and reassigned. *Id.* In contrast to the instant Complaint, those employees who were replaced were Defendants and the Complaint alleged with specificity the ways in which they were connected to and promulgated the alleged Fraud. *Id.* at *8-*11. The instant Complaint, however, fails to plead any connection between the resignation of these two employees and the accounting errors that led SportsLine to restate its financial statements. Neither do Plaintiffs allege that the employees who resigned were part of the alleged fraud or that they knew about or approved of any misconduct on the part of other employees. *See Abrams v. Baker Hughs, Inc.*, 292 F.3d 424, 434 (5th Cir. 2002)(resignation of key employees in conjunction with a number of other allegations was insufficient to demonstrate a strong inference of scienter); *In re Corrpro Securities Litigation*, 2003 WL 23138459, at *5-6 (N.D. Ohio 2003)(no inference of scienter created by departure of four CFOs when complaint did not establish any connection between the job turnover and the Company's problems).

**6.      Opportunity**

Plaintiffs allege that by virtue of the positions of Defendants Levy and Sanders as

officers and directors they were privy to all SportsLine information and either knew or recklessly disregarded that the public documents and statements issued or disseminated by or in the name of the Company were materially false and misleading. (Compl. ¶ 136). Defendants argue that at best the Complaint alleges Defendants' negligence.

The Company filed a Form DEF 14A with the SEC stating that the Company's audit committee closely monitored the integrity of the accounting and financial controls and that the committee had members sufficiently competent to ensure the accuracy of the Company's filed financial statements. (Compl. ¶¶ 41-43, 63). Beyond the Company's assurances to the SEC that its financial statements were accurate, Defendants Levy and Sanders, in signing them, attested to the truth contained in the subsequently restated financial statements filed with the SEC during the Class Period. (Compl. ¶¶ 51, 55, 61, 73, 78, 87, 94, 105, 111, 114, 122-23). Plaintiffs argue that given the "Defendants' access to internal information about the Company and its financial condition, it is inconceivable that Defendants were not aware of the alleged fraud." (Pls.' Resp. at 16).

While Plaintiffs have pled that Defendants were privy to all Company internal information, they have not pled that Defendants were privy to specific information that revealed the inaccurate nature of the misstatements. The allegations pled could be used to argue that Defendants were negligent in not making sure that the subsequently restated statements were accurate when first made. Plaintiffs have not, however, pled facts showing that Defendants' misstatements were an extreme departure from the standards of ordinary care that would present a danger of misleading buyers or sellers which was either known to Defendants or so obvious that Defendants must have been aware of it. *Broad v. Rockwell International Corp.*, 642 F.2d at 961-962. The instant case is different from those in which Defendants consciously ignored or

recklessly disregarded red flags that they were engaging in suspect accounting practices.  *See In re Sunbeam*, 89 F.Supp.2d at 1340 (Complaint (1) alleged that use of fraudulent accounting practices to manipulate financial results was common knowledge; (2) detailed open discussion of and joking among upper-level Company employees including Defendants against whom Court did not dismiss Complaint; and (3) alleged instances when Defendants were confronted with the fraudulent behavior); *In re Adaptive Broadband Sec. Litig.*, 2002 U.S. Dist. LEXIS 5887 (accounting manager "'jokingly' gave Defendant a Monopoly-esque 'get-out-of-jail-free card'" in recognition of belief that Defendant was acting improperly).  In addition, as previously discussed, motive and opportunity to commit fraud are alone insufficient to establish scienter. *Bryant*, 187 F.3d at 1281.

**7.    Sale of Stock by Company Insiders**

Plaintiffs allege that Defendant Levy suspiciously pocketed proceeds of $81,356 form sales of stock, within days[9] of the issuance of the Company's SEC Form 10-Q for the period ended June 30, 2003, the last financial disclosure in the class period.  (Compl. ¶ 135).  They also allege that Defendant Sanders suspiciously pocketed proceeds of $28,677 from sales of stock on the day[10] of the issuance of the Company's SEC Form 10-Q for the period ended June 30, 2003. (Compl. ¶ 135).  Insider executive Mark J. Mariani, sold $26,874 worth of Company stock. (Compl. ¶ 3).  As shown by the Form 4's filed with the SEC by Defendant Sanders, Defendant Levi, and Mariani, none of them pocketed proceeds, but rather forfeited stock for tax

---

[9]Defendant Levy completed the referenced sale of stock on August 18, 2003.
[10]Defendant Sanders completed the referenced sale of stock on August 14, 2003.

withholding purposes. (Defs.' Motion Exh. A).[11]  Sanders forfeited less than 8% of his holdings and retained 181,141 shares of stock.  *Id.*  Levy forfeited less than 2% of his holdings in the Company, retaining nearly two million shares of SportsLine.  Moreover, Levy purchased 420,950 shares during the Class Period.  (Defs.' Motion Exh. C).

The Court does not believe that the forfeiture of a small percentage of their stock for tax withholding purposes by three executives, especially when coupled with Levy's purchase of shares during the same time period supports a strong inference of scienter.  Moreover, in their Response to Defendants' Motion, Plaintiffs spend a good deal of time arguing that "stock sales are not a prerequisite to a finding of scienter" in an apparent concession that the facts alleged do not even show insider trading.  (Pls.' Resp. at 17).

**8.   Summary**

In the Second Amended Consolidated Class Action Complaint, in an attempt to plead scienter, Plaintiffs allege that: (1) SportsLine failed to comply with GAAP; (2) because stock was being used to pay for the acquisition of Sandbox.com and for payment to Viacom, the Company and individual Defendants had a motive to inflate the price of the Company's stock; (3) two Company employees resigned during the Class Period; (4) the individual Defendants, by virtue of their positions as officers and directors are in a position to know the nature and extent of accounting irregularities; and (5) Company insiders, including the individual Defendants, sold stock during the Class Period.  Plaintiffs do not, however allege that Defendants or anyone at SportsLine actually knew that misstatements were being made.  Neither do they allege that

---

[11]The Court can properly consider documents reference din the Complaint as well as public filings in a motion to dismiss a securities fraud complaint.  See *Bryant*, 187 F.3d at 1276; *Druskin*, 299 F.Supp.2d at 1320; *Malin*, 17 F.Supp.2d at 1351-52.

Defendants or anyone at SportsLine received any warning that the Company's internal

accounting practices were in anyway suspect such that Defendants' failure to investigate further

marked severe recklessness.  Plaintiffs have not alleged the existence of any internal reports,

warnings, or conversations that would support an inference of scienter.  The following language

from a Fifth Circuit case is instructive :

> [T]he [] allegations fail to reach the required standard.  Plaintiffs point to no allegations
> that the defendants knew about the internal control problems, only that they should have
> known based on their corporate positions within the company...Also the mere publication
> of inaccurate accounting figures or failure to follow GAAP, without more, does not
> establish scienter.  The party must know that it is publishing materially false information
> or must be severely reckless in publishing such information.  The plaintiffs point to no
> specific internal or external report available at the time of the alleged misstatements that
> would contradict them.

*Abrams v. Baker Hughs, Inc.*, 292 F.3d 424, 432 (5th Cir. 2002)(internal citations omitted).

The scienter allegations in the Second Amended Consolidated Class Action Complaint

are legally inadequate.  Under Federal Rule of Civil Procedure 15(a), leave to amend a

Complaint "shall be freely given when justice so requires."  Fed.R.Civ.P. 15(a).  "A district court

need not, however, allow an amendment (1) where there has been undue delay, bad faith,

dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2)

where allowing amendment would cause undue prejudice to the opposing party; or (3) where

amendment would be futile."  *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001)(citing

*Foman v. Davis*, 371 U.S. 178 (1962).  Amendment in the instant case would be futile.  The

Eleventh Circuit has held that "if a more carefully drafted complaint could not state a claim

under the standard of *Conley*, 355 U.S. at 45-46, dismissal with prejudice is proper."  *Bank v.*

*Pitt*, 928 F.2d 1108, 1112 (1991).  Because the instant Complaint alleges violation of section

10(b) of the Securities Exchange Act of 1934 and 17 C.F.R. § 240.10b-5, dismissal with

prejudice is proper if the a more carefully drafted complaint could not state a claim under the heightened pleading standards of the PSLRA and those cases interpreting it. *See Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1281 (11th Cir 1999). Numerous separate complaints were originally filed. After those cases were consolidated, the Amended Consolidated Class Action Complaint (DE 37) was filed. On February 26, 2004, the Court gave Plaintiffs permission to file the Second Amended Consolidated Class Action Complaint (DE 43). Plaintiffs have had significant time to carefully draft their Complaint. The Court does not find fault with the drafting of said Complaint, but rather with the legal sufficiency of the facts alleged. The PSLRA stays discovery until after Plaintiffs prevail at the motion to dismiss stage. At the hearing on the Motion to Dismiss, the Court gave the Parties the opportunity to address the issue of amendment. Plaintiffs mentioned that if the Complaint were to be dismissed they would not have the opportunity to conduct discovery. The Court finds that given the insufficiency of the facts and the discovery stay provision of the PSLRA, amendment of the Complaint would be futile.

**9.      Statutory Safe Harbor Provisions**

The Court dismisses the Complaint because it finds that Plaintiffs have not adequately pled scienter. It is therefore unnecessary to reach the question of whether the Complaint should be dismissed under the PSLRA's safe-harbor provision and the "bespeaks caution" doctrine.

**Analysis of Section 20(a) Claim**

Section 20(a) of the Exchange Act holds controlling persons "liable jointly and severally

with and to the same extent as such controlled person to any person to whom such controlled

person is liable" under the Exchange Act.  15 U.S.C. § 78t(a).  Because Plaintiffs have failed to

establish a predicate violation of Section 10(b) or Rule 10b-5 as to any of the Defendants, their

Section 20(a) claim cannot stand.


Accordingly it is hereby

ORDERED AND ADJUDGED that the Defendants' Motion to Dismiss and Incorporated

Memorandum of Law (DE 51) is GRANTED.  Plaintiffs' Second Amended Complaint is

DISMISSED WITH PREJUDICE.

DONE AND ORDERED in Chambers at West Palm Beach, Florida, this ____ day of

July, 2004.


DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE


Copies to Counsel of Record